# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

MARTHA WILSON and TIMOTHY CHABOT,

      Plaintiffs,

v.                                                              CV 10-0797 JB/WPL

ALBUQUERQUE POLICE OFFICERS
JENNIFER JARA and DANIEL VAZQUEZ,

      Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

      This matter comes before me on two separate motions, one by Plaintiff Timothy Chabot and the other by Plaintiff Martha Wilson. On December 2, 2011, Chabot moved to vacate or amend the final judgment. (Doc. 96.) That same day, Wilson moved for a judgment notwithstanding the verdict, to amend the judgment, and for a new trial. (Doc. 97.) The Court entered an Order of Reference, requesting that I conduct legal analysis and recommend a disposition on these motions. (Doc. 101.) After having carefully reviewed the facts and relevant law, I now recommend that the Court deny both motions.

### FACTUAL BACKGROUND

      These motions arise out of a civil trial surrounding the arrest of Wilson and Chabot by two Albuquerque police officers at Wilson's home. Only a brief summary of the facts is necessary for the purposes of this motion. Officers Jennifer Jara and Daniel Vazquez were dispatched to Wilson's home to investigate a domestic violence complaint against Chabot, Wilson's son. (Doc. 45 at 2, 4.) Wilson answered the door, and she initially refused the officers' demand to get her son until they ordered her to do so. (*Id.* at 5-7.) She acquiesced, Chabot came to the door, and the officers asked

him to go downstairs. (*Id*. at 8-10) When Chabot did not comply, he was arrested while standing at the interior of the doorway. (*Id*. at 11.) Vazquez, at some point, entered into the house when Wilson pulled on his arm. (*Id*. at 11-12.) After arresting Chabot, the officers took him downstairs and ordered Wilson not to follow or she would be arrested. (*Id*. at 15.) Wilson followed them outside and was arrested for battery on a police officer, disorderly conduct, and resisting arrest/obstructing justice. (*Id.*)

The state brought criminal charges against Chabot, and he was represented at trial by Joseph Kennedy. (Doc. 1 Ex. A at 3; Doc. 96 at 1.) Chabot was found guilty of resisting arrest and criminal damage to property but not guilty of domestic violence or battery. (Doc. 96 at 1-2.) After the trial, Chabot appealed his convictions. (*Id*. at 2.) He subsequently moved out of New Mexico. (*Id*.) After moving, he was pulled over by a highway patrol officer, and the officer informed him that there was a warrant out for his arrest in connection with the convictions in New Mexico. (*Id*.) Kennedy attempted to quash the warrant unsuccessfully. (*Id*. at 2-3.)

## PROCEDURAL BACKGROUND

Wilson and Chabot, acting through their counsel, Kennedy, filed this lawsuit in state court for alleged civil rights violations, and the case was removed to federal court. (Doc. 1; Doc. 1 Ex. A.) Wilson moved for summary judgment (Doc. 31), which the Court granted in part and denied in part (Doc. 45). The Court held that Jara and Vazquez unconstitutionally seized Wilson in her home and that they were not entitled to qualified immunity on that claim. (*Id.* at 1.) However, it also found that there were lingering questions of fact as to whether Jara and Vazquez unconstitutionally entered Wilson's home or whether they had probable cause for her arrest, so the Court denied summary judgment with respect to those claims, leaving them for the jury to resolve. (*Id.* at 1, 45, 49.)

The case went to trial on November 1, 2011. (Doc. 84.) Chabot did not attend the trial

2

because the warrant for his arrest was still outstanding. (Doc. 96 at 3.) After three days, the jury

found that Jara and Vazquez did not enter Wilson's home unlawfully, nor did they unlawfully arrest

Wilson. (Doc. 83.) They awarded Wilson $7,500 in compensatory damages for unlawful seizure and

$30,000 in punitive damages against each Defendant. (*Id*.) The Court entered a final judgment on

November 4, 2011. (Doc. 87.) In the judgment, the Court dismissed Chabot's claims with prejudice

"based upon the representations of counsel at pre-trial hearings and at trial." (*Id*. at 1.)

On December 2, 2011, Kennedy moved to withdraw as counsel. (Doc. 89.) The Court

granted the motion, but allowed him to appear in a limited capacity to recover his costs and fees.

(Doc. 91; Doc. 104.) The same day, Chabot and Wilson brought their respective motions to

challenge the outcome of the case. (Doc. 96; Doc. 97.) Defendants responded to both motions. (Doc.

107; Doc. 109.) Chabot filed his reply brief late on January 9, 2011 (Doc. 118), and it far exceeded

the page limit set by the local rules. *See* D.N.M.LR-Civ. 7.5 ("A reply brief must not exceed twelve

(12) double-spaced pages."). Wilson filed an untimely motion for an extension of time to file a reply

brief, which I nonetheless granted. (Doc. 116; Doc. 120.) In the order granting the extension, I

reminded her to follow the local rules. (Doc. 120 at 1.) She timely filed her reply, but it failed to

comply with the local rules.[1] (Doc. 125; Doc. 127.)

---

[1] It is clear that Wilson changed the spacing, font, and margin size to make sure that the brief was twelve pages long. In addition to the page limit, the local rules state that motions must be in size twelve font, the left, right and bottom margins must be at least one inch, the top margin must be at least one and a half inches, and all text must be double spaced, except for footnotes and block quotations. D.N.M.LR-Civ. 10.1. Furthermore, Wilson attached almost sixty pages of exhibits, and exhibits are limited to fifty pages. D.N.M.LR-Civ. 10-5. These exhibits included documents already in the record, which violates the rule against duplicative exhibits. D.N.M.LR-Civ. 10.7.

LEGAL STANDARDS

## I.     Rule 50

Rule 50 permits a district court to enter judgment as a matter of law, or a judgment notwithstanding the verdict, in a jury trial when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." FED. R. CIV. P. 50(a). The party seeking judgment as a matter of law must move for the judgment before the case is submitted to the jury. FED. R. CIV. P. 50(a)(2). If the court does not grant the motion, then the party may renew the motion after a jury has delivered its verdict. FED. R. CIV. P. 50(b). A Rule 50(a) motion is a prerequisite to a 50(b) motion. *See M.D. Mark, Inc. v. Kerr-McGee Corp*., 565 F.3d 753, 762 (10th Cir. 2009); *Marshall v. Columbia Lea Reg'l Hosp*., 474 F.3d 733, 738 (10th Cir. 2007). Furthermore, a Rule 50(b) motion may only raise arguments that the moving party raised in the initial Rule 50(a) motion. *Marshall*, 747 F.3d at 738.

The Court may enter a judgment as a matter of law "only if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion." *McInnis v. Fairfield Communities, Inc.*, 458 F.3d 1129, 1136 (10th Cir. 2006) (quoting *Baty v. Willamette Indus.*, 172 F.3d 1232, 1241 (10th Cir. 1999)). The Court may not

> [W]eigh the evidence, pass on the credibility of the witnesses, or substitute [its] conclusions for those of the jury. However, [it] must enter judgment as a matter of law in favor of the moving party if there is no legally sufficient evidentiary basis with respect to a claim or defense under the controlling law. [It] must view the evidence and any inferences to be drawn therefrom most favorably to the non-moving party.

*Id.* So long as there is sufficient evidence to support the jury's verdict, the verdict will be upheld. *Wagner v. Live Motor Sports, Inc*., 586 F.3d 1237, 1244 (10th Cir. 2009).

## II.    Rule 59

A court is empowered to either grant a new trial or alter the final judgment under Rule 59. The Court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1)(A). While the language of Rule 59(a) is seemingly broad, a motion for a new trial or to alter the final judgment is "generally not regarded with favor, and is granted only with great caution." *United States v. Perea*, 458 F.2d 535, 536 (10th Cir. 1972). The moving party "must show either trial error which constitutes prejudicial error or that the verdict was not based on substantial evidence." *White v. Conoco, Inc*., 710 F.2d 1442, 1443 (10th Cir. 1983).

A Rule 59(e) motion to alter or amend the judgment is proper when there is an intervening change in the law or newly discovered evidence, to correct a clear error, or to prevent manifest injustice. *See Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). These motions are not intended to re-litigate the same issues, present new theories, introduce evidence available at trial that was not proffered, or re-argue the merits. *See Paramount Pictures Corp. v. Video Broad. Sys., Inc.*, No. 89-1412-C, 1989 WL 159369, at *1 (D. Kan. Dec. 15, 1989) (unpublished) (citing *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1219 (5th Cir. 1986)); *see also In re Busch*, 369 B.R. 614, 621 (B.A.P. 10th Cir. 2007) (citing *Fontenot*, 791 F.2d at 1219); *Arnett v. United States*, 910 F. Supp. 515, 517 (D. Kan. 1995) ("A party's failure to present his strongest case in the first instance does not entitle him to a second chance in the form of a motion to amend."). The decision to grant or deny the motion is in the sound discretion of the trial court. *See Matthews v. C.E.C. Indus. Corp*, No. 98-4184, 1999 WL 1244491, at *7 (10th Cir. Dec. 21, 1999) (unpublished); *see also Comm. for the First Amendment v. Campbell*, 962 F.2d 1517, 1523 (10th Cir. 1992).

### III.   Rule 60

Under Rule 60(b), a court may relieve a party from a final judgment on the basis of

(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial . . . ; (3) fraud . . . , misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged . . . ; or (6) any other reason that justifies relief.

FED. R. CIV. P. 60(b)(1)-(6).

Of particular relevance here are provisions 60(b)(1), (2), and (3).[2] Relief under 60(b)(1) is justified when there has been "excusable neglect." The moving party has the burden of pleading and proving that there was excusable neglect. *See Pelican Prod. Corp. v. Marino*, 893 F.2d 1143, 1146 (10th Cir. 1990). Relief will only be granted if "(1) a party made an excusable litigation mistake or an attorney acted without authority from a party; or (2) the judge made a substantive mistake of law or fact in the final judgment or order." *Yapp v. Excel Corp.*, 186 F.3d 1222, 1231 (10th Cir. 1999).

Should the moving party claim she has unearthed new evidence, then she must show that "the evidence was newly discovered since the trial . . . [and the moving party] was diligent in discovering the new evidence." *Zurich N. Am. v. Matrix Serv., Inc.*, 426 F.3d 1281, 1290 (10th Cir. 2005) (internal quotation marks and citations omitted). The new evidence cannot be cumulative, nor can it be intended only for impeachment. *Id.* The evidence must be "material," such that "a new trial

---

[2] Neither Chabot nor Wilson cited specific provisions of Rule 60 in their initial motions. However, Chabot claimed that Kennedy acted without his authority in permitting dismissal with prejudice (Doc. 96 at 3), and Wilson made repeated references to "new evidence" as well as "fraud" perpetrated by defense counsel. (*See* Doc. 94; Doc. 97; Doc. 126.) I have liberally construed their motions, and it appears that Chabot brings a claim under Rule 60(b)(1) and Wilson brings claims under 60(b)(2) & (3). None of the other provisions appear to apply, and I will not consider Rule 60(b)(6), which serves as a "catch-all" category and is reserved for extraordinary circumstances. *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005); *Pierce v. Cook & Co.*, 518 F.2d 720, 723 (10th Cir. 1975) (holding only "an extraordinary situation" justifies relief under Rule 60(b)(6)).

with the newly discovered evidence would probably produce a different result." *Id.*

Lastly, the moving party may obtain relief from a final judgment upon showing through clear and convincing evidence that the opposing party has engaged in fraud or made misrepresentations to the court. FED. R. CIV. P. 60(b)(3); *United States v. Buck*, 281 F.3d 1336, 1342 (10th Cir. 2002). Additionally, the fraud must "substantially have interfered with the aggrieved party's ability to fully and fairly to prepare for and proceed at trial." *Zurich N. Am. v. Matrix Serv., Inc.*, 426 F.3d 1281, 1290 (10th Cir. 2005).

## DISCUSSION

### I.    Chabot's Rule 60 Motion

I turn first to Chabot's motion to vacate or amend the final judgment under Rule 60 and change the dismissal of his claims from "with prejudice" to "without prejudice." (Doc. 96 at 1.) He argues that because Kennedy did not quash the warrant for his arrest in New Mexico, he was "prevented" from coming to the state for trial. (*Id.* at 2.) As a result, Chabot agreed to dismiss the case, but he insists that he never consented to a dismissal with prejudice. (*Id.* at 3.) Allegedly, Kennedy knew of his client's wishes, but he misinformed the Court. (*Id.* at 3-4; Doc. 118.) I interpret these allegations to make two separate claims: excusable neglect and ineffective assistance of counsel.

####    A.    *Excusable Neglect*

First, Chabot claims that Kennedy acted without his consent when he agreed to dismiss the case with prejudice, and thus he committed excusable neglect.[3] It is well settled that an attorney may

---

[3] Chabot used the phrase "excusable neglect" for the first time in his reply brief. Ordinarily, a moving party may not raise new legal arguments or new claims in a reply brief. *ClearOne Communs., Inc. v. Bowers*, 643 F.3d 735, 782 (10th Cir. 2011); *Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000). "The reasons are obvious. It robs the [respondent] of the opportunity to

not consent to the final disposition of his client's case without express authority. *Thomas v. Colo. Trust Deed Funds, Inc.*, 366 F.2d 136, 139 (10th Cir. 1966). There is a presumption, though, that an attorney has authority to consent on behalf of his client unless there is evidence on the record to the contrary. *Shoels v. Klebold*, 375 F.3d 1054, 1060 (10th Cir. 2004). However, in this Circuit, the presumption is "easily rebuttable," and the testimony of the client may overcome that burden. *Fed. Deposit Ins. Corp. v. Oaklawn Apartments,* 959 F.2d 170, 175 (10th Cir. 1992); *Thomas*, 366 F.2d at 139. An affidavit, even if conclusory, sufficiently rebuts the presumption of authority. *See Fed. Deposit Ins. Corp.*, 959 F.2d at 175; *Surety Ins. Co. of Cal. v. Williams*, 729 F.2d 581, 582 (8th Cir. 1984).

Chabot's motion includes two affidavits,[4] one from Martha Wilson and one from himself, stating that he never agreed to dismiss the case with prejudice. (Doc. 96 at 22-24, 37-38.) These two affidavits are sufficient to overcome the presumption that Kennedy had authority to dismiss the case with prejudice and, at minimum, warrant an evidentiary hearing on the matter.

However, I do not need to hold a hearing in order to recommend a final disposition on this motion. Even if I accept, *arguendo*, that Kennedy did not have authority to dismiss the case with prejudice, Chabot is barred from relief. Chabot specifically requested that I amend the judgment

---

demonstrate that the record does not support . . . [the] factual assertions and to present an analysis of the pertinent legal precedent that may compel a contrary result." *Stump,* 211 F.3d at 533. However, a court must construe the pleadings of a *pro se* party liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2001); *Hall v. Bellmon*, 935 F.2d 1106, 1110-11 (10th Cir. 1991) (quotation omitted). Since Chabot did allege facts that support an excusable neglect claim in his initial motion, I will consider his argument.

[4] There is also a third affidavit from Tiffany Chabot, Chabot's sister. She states that Chabot told her that "he wanted to seek justice against defendants." (Doc. 96 at 35.) However, she was not present during the attorney-client conversations, so she does not have first hand knowledge of what they discussed. I will not consider this affidavit. *See* FED. R. EVID. 602.

such that his claims are dismissed without prejudice. A dismissal without prejudice would not provide relief to Chabot because it would have the practical effect of a dismissal with prejudice since the statute of limitations has expired. *AdvantEdge Bus. Group, L.L.C. v. Thomas E. Mestmaker & Assocs.,* 552 F.3d 1233, 1236 (10th Cir. 2009) (citing *Gocolay v. N.M. Fed. Sav. & Loan Ass'n*, 968 F.2d 1017, 1021 (10th Cir. 1992)). Chabot filed a civil rights claim under 42 U.S.C. §1983 (Doc. 1 Ex. 1 at 1), and in New Mexico the statute of limitations on such claims is three years. *Mondragon v. Thompson*, 519 F.3d 1078, 1081 (10th Cir. 2008). Even had the Court dismissed Chabot's claim in November 2011 without prejudice, Chabot would still have been barred from re-filing his case since the statute of limitations tolled on this action in August 2010. Under the harmless error rule, a court must disregard any errors or defects if they do not affect a party's substantial rights. FED. R. CIV. P. 61. Since amending the judgment will not enable Chabot to return to court, I recommend that the Court deny his motion.

    B.    *Ineffective Assistance of Counsel*

    Although the harmless error doctrine prevents the Court from granting Chabot's motion, I will nonetheless turn to Chabot's claim of ineffective assistance of counsel because both Chabot and Wilson seem to be confused as to the proper forum to seek relief for their dissatisfaction with Kennedy.[5] In addition to alleging that Kennedy acted without authority, Chabot makes numerous assertions regarding what Kennedy did not do or should not have done. While Chabot does not use the phrase "ineffective assistance of counsel" in his brief or reply, it is clear that this is his core allegation. *See Premo v. Moore*, - - U.S. - -, 131 S. Ct. 733, 739 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 121-23 (2009)) (defining ineffective assistance as deficient performance

---

[5] To be clear, this Court is taking no position on Kennedy's legal performance.

by counsel that results in prejudice).

The constitutional right to effective assistance of counsel stems from the Sixth Amendment's guarantee of counsel in criminal trials. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). However, there is no right to counsel in a civil trial. *Beaudry v. Corr. Corp. of Am.*, 331 F.3d 1164, 1169 (10th Cir. 2003). Accordingly, "the general rule in civil cases is that the ineffective assistance of counsel is not a basis for appeal or retrial." *Nelson v. Boeing Co.*, 446 F.3d 1118, 1119 (10th Cir. 2006) (citing *MacCuish v. United States*, 844 F.2d 733, 735 (10th Cir. 1988)). In a civil case, if a party's attorney "performs below professionally acceptable standards, with adverse effects on the client's case, the client's remedy is not reversal, but rather a legal malpractice lawsuit against the deficient attorney." *Id.; see also Link v. Wabash R.R. Co.*, 370 U.S. 626, 634 n.10 (1962).

Defendant's response raised this matter, arguing that this Court is "an improper forum to address potential legal malpractice claims." (Doc. 109 at 11.) Chabot's reply fails to directly address this claim, arguing that "legal malpractice . . . [is] a thought that the Plaintiff has not even pondered." (Doc. 118 at 18.) That is irrelevant. Whether Chabot has "pondered" suing Kennedy does not change the core of his legal argument before this Court. He is asking for a new trial because of the performance of his counsel, which is impermissible as a matter of law.

Since ineffective assistance cannot be the basis for relief, and since Chabot's excusable neglect claim, even if meritorious, will not change the functional outcome of the judgment, I recommend that the Court deny his motion.

## II.     Wilson's Rule 50, 59, and 60 Motion

Wilson brings a mass of claims under Rules 59 and 60 and one claim under Rule 50. With the exception of her claim under Rule 50, her allegations are not linked to specific provisions of the Rules. Since she is acting *pro se*, this is perfectly understandable; still, it creates a challenge, since

each rule has unique procedural and substantive requirements. I will navigate the arguments based on the content of the allegations, and I will apply the various rules where they seem to most logically fit.

With this in mind, I turn to Wilson's claims. Like Chabot, she alleges that Kennedy's performance was deficient, which ultimately amounts to an ineffective assistance of counsel claim.[6] (Doc. 97 at 3, 5-6, 7, 8, 9, 10.) Additionally, she argues that she is entitled to a judgment as a matter of law on the illegal entry and arrest claims (*id.* at 11-12), the Court improperly suppressed and admitted evidence (*id.* at 6, 7, 8), she has new evidence which warrants a new trial (*id.* at 5, 7, 8, 10, 11), and the defense counsel committed fraud during the trial (*id*. at 9-10; Doc. 126 at 7-8). Her reply brief contained several new claims which I will not consider.[7] For the reasons discussed below, I find that none of these arguments have merit and I recommend that the Court deny her motion.

A.      *Judgment as a Matter of Law*

Wilson claims that she is entitled to a judgment as a matter of law, or a judgment notwithstanding the verdict, under Rule 50(b) on both the illegal entry and the arrest claims. In addition to challenging the final jury verdict, Wilson also challenges the denial of summary

---

[6] I will not discuss this claim since ineffective assistance of counsel is not a valid reason for a new trial in a civil matter.

[7] As previously discussed, a moving party must state with specificity her grounds for relief in her initial motion, and this Court will not consider new issues raised for the first time in a reply brief. *Supra* note 3; *see also* FED. R. CIV. P. 7(b)(1); D.N.M.LR-Civ 7.1(a). Wilson raised several claims for the first time in her reply brief. Where the facts underlying the legal claims were presented in the initial motion, I will consider the claim. However, I will not consider claims that are based on entirely new factual allegations not mentioned in her initial motion. These include the following allegations: 1) that Kennedy dropped her claim for excessive force without consulting her, which amount to excusable neglect (Doc. 126 at 7); 2) defense counsel committed fraud by offering to the Court a transcript of the belt tape which does not accurately reflect the actual tape (Doc. 126 at 8); and 3) the jury instructions were "completely prejudicial" (Doc. 126 at 9).

11

judgment. She argues that there was no issue of material fact as to whether the Defendants' entry into her home or her arrest was constitutional, so judgment should have been awarded in her favor. (Doc. 126 at 3-4.) She also claims that since the Court granted summary judgment on the illegal seizure claim, she should have prevailed on all her claims. (Doc. 97 at 11).

When a district court denies summary judgment on grounds of a genuine factual dispute, the proper procedure is for the party to move for judgment as a matter of law at trial under Rule 50(a). *See* FED. R. CIV. P. 50 advisory committee's note (1991); *Farthing v. City of Shawnee*, 39 F.3d 1131, 1140 n.10 (10th Cir. 1994) (finding the standard of Rule 56 mirrors the standard of Rule 50); *Sandoval v. U. S. Smelting, Refining & Mining Co.*, 544 F.2d 463, 464 (10th Cir. 1976) ("a denial of summary judgment does not rule out the possibility of a directed verdict"); 11-56 MOORE'S FEDERAL PRACTICE - CIVIL § 56.130. If that motion is denied, it may be renewed after the verdict through a Rule 50(b) motion. 11-56 MOORE'S FEDERAL PRACTICE - CIVIL § 56.130.

Since Rule 50 proscribes a method for reviewing a jury verdict and the denial of summary judgment, Wilson's arguments that the jury incorrectly considered the evidence and that the Court erred in denying summary judgment may be reviewed simultaneously by analyzing the evidence presented to the jury at trial.

Wilson argues that the jury erroneously found for Defendants and that "there was over whelming [sic] evidence through direct testimony from Officer Jara, Officer Vasquez [sic] as well as the Plaintiff Martha Wilson" to support her claims of illegal entry and illegal arrest. (Doc. 126 at 3.) First, there is the matter of preserving claims. From a purely procedural prospective, Wilson is barred from raising the illegal arrest claim under Rule 50(b). During trial, Kennedy moved for a directed verdict under Rule 50(a) on illegal entry, but not on the legality of the arrest. (Doc. 85 at 6.) Thus, only the illegal entry claim was properly preserved. *M.D. Mark, Inc.* 565 F.3d at 762;

*Marshall*, 747 F.3d at 738.

Wilson's reply acknowledges the fact that her attorney only moved for a directed verdict on illegal entry, but she insists that Kennedy's failure to move for a directed verdict on both claims amounts to "excusable neglect." (Doc. 126 at 2.) Aside from using the phrase "excusable neglect," she offers no information as to why or how Kennedy's decision to make a 50(a) motion on only the legality of the entry was excusable neglect. There is no indication that Kennedy acted without authority when he moved for a directed verdict on only one claim. Stating that something is excusable neglect does not make it so.

Wilson has not offered sufficient support to justify a judgment as a matter of law on the illegal entry claim. In support of her allegation that the testimony at trial is irrefutably in her favor, she directs the Court to "*See Testimony from Trial*."(Doc. 126 at 3.) However, she provides no specific citations a transcript of the trial, nor does she provide the transcript as evidence.[8] This means her argument in support of her 50(b) motion is unsubstantiated. *See* D.N.M.LR- Civ. 7.3(b) ("Movant must submit evidence . . . in support of allegations of fact."). Nonetheless, in the interest of justice, I will proceed to review the merits of her arguments, despite the absence of transcripts to check the veracity of her allegations.

After claiming that the testimony at trial supports only one outcome, Wilson makes the following arguments, which I have numbered for clarity:

1)      "The Defendants made statements during trial that the [sic] grabbed Timothy before

---

[8] Wilson states that she could not afford to purchase transcripts and that she "should be afforded the right to have justice." (Doc. 126 at 3.) This is not an excuse. The Court makes transcripts available for free or for a reduced rate for truly indigent parties in civil proceedings. *See* 28 U.S.C. § 753(f). Wilson did not attempt to obtain a copy of the transcripts through this method. Rather, she waited until filing a reply brief to a motion for judgment as a matter of law to raise financial considerations.

the whole touching incident between Wilson and Vasquez [sic]." (*Id.*)

2)      "Both Officers testified that they violated Chabot's and Wilson's rights." (*Id.*)

3)      "Both Officers testified that Martha Wilson went to get her son after making statements if she didn't they would go in and get him." (*Id.*)

4)      "They Both [sic] testified that [Chabot] never came out of the home and that he went deeper into the apartment when they went to grab him." (*Id.* at 3-4.)

5)      "The belt tapes were introduced and were played at trial. This proves that Martha Wilson went to get her son and he only came because his mother told him he had to because the police were threatening to come in." (*Id.* at 4.)

To begin with, statements two and three provide support for an uncontested issue, that Wilson was illegally seized when she was ordered to get her son. (*See* Doc. 45 at 37) Thus, for the purposes of determining whether she is entitled to judgment as a matter of law on the illegal entry claim, I will consider statements one, four, and five.

As stated in the order for summary judgment, the key inquiry in whether the Defendants unconstitutionally entered Wilson's home when they grabbed Chabot from the doorway to arrest him turns on why Chabot came to the door. (Doc. 45 at 47.) If he came to the door voluntarily,[9] then the entry into the threshold of the home was legal. (*Id.* (citing *United States v. Flowers*, 336 F.3d 1222 (10th Cir. 2003); *McKinnon v. Carr*, 103 F.3d 934 (10th Cir. 1996)).) If he came because he was ordered to do so, then the entry was unconstitutional. (*Id.*) However, the Court was not clear at to why Chabot came to the door; it was this question that was left for the jury.

Neither statements one nor four is clear proof that Chabot came to the door because he was

---

[9] The Order denying summary judgment notes Chabot may have come to the door because he heard voices. (Doc. 45 at 47.)

ordered to do so; in fact, they have no bearing on the *why* Chabot came to the door at all. Statement number five is the only piece of evidence which goes to the heart of the inquiry. A review of the belt tape transcript does not address the question. While the transcript makes it clear that Wilson was ordered to get her son, it still is not clear why Chabot came to the door. The relevant portion of the transcript reads:

OFFICER JARA:     Right now at this point in time it's just a very simple investigation. Okay? We go in there and talk to him, find out his side of the story and (inaudible) or we can come in and - -

FEMALE VOICE:[10]   (Inaudible) to go get him so he can come talk to you.

OFFICER JARA:     Then you do that.

FEMALE VOICE:     But I need your badge number.

OFFICER JARA:     I will give you all of that.

MALE VOICE:[11]     That's fine.

FEMALE VOICE:     And if I have any problems then I'm going to go down to - -

OFFICER JARA:     Definitely.

MALE VOICE:     You're welcome to do that ma'am.

OFFICER JARA:     Hello? How are you doing, sir?

MALE VOICE:[12]     How are you doing?

OFFICER JARA:     Do you mind having a talk downstairs?

---

[10] Wilson

[11] Vazquez

[12] Chabot

(Doc. 38 Ex. H at 7.) After looking at the transcript, it is still unclear why Chabot came to the door. The belt tape does provide any concrete insight into Chabot's mental state or motivation. Essentially, I am left with the conflicting testimony of Jara and Vazquez on one hand and Wilson on the other in order to determine Chabot's true reason for walking up to the doorway. At trial, this would have been an issue of credibility. I cannot make credibility determinations and I cannot substitute the conclusions of the jury with my own. *See McInnis* 458 F.3d at 1136.

Wilson's additional attack on the denial of summary judgment has a serious logical flaw. She argues that

> Since the . . . Court determined that the defendants Officer Jenifer [sic] Jara and Officer Vasquez [sic] had illegally seized the Plaintiff Martha Wilson. [sic] It must follow as a matter of law that the seizure also lacked the probable cause and the right to seize Plaintiff in her home without a warrant or to support a full custodial arrest.

(Doc. 97 at 11.) To clarify, Wilson contends that since the Court found that Jara's order to "go get your son" constituted an involuntary seizure under the Fourth Amendment (*see* Doc. 45 at 37), then the entry into her home and her arrest must also be unconstitutional. However, the order granting in part and denying in part summary judgment made it clear that these are distinct constitutional inquiries. (Doc. 45 at 36.) The Court "could not determine as a matter of law . . . that the Defendants violated Wilson's Fourth Amendment rights when they reached across the threshold, or when they arrested her for resisting arrest and obstruction of justice." (*Id.*) To conclude that because the Court found for Wilson on one claim she should prevail on all of them ignores the fact that they are independent issues.

To recommend that the Court enter judgment as a matter of law, Wilson must demonstrate that all of the evidence points only one way. *Id.* However, she has only provided me with two incidents which are not probative of the issue, and a third which is ambiguous. Furthermore, her

attack on summary judgment confuses the relevant legal standards and fails to appreciate that each of her claims requires a separate analysis.  Accordingly, I recommend that the Court deny her 50(b) motion.

        B.     *Exclusion of Evidence*

      Wilson challenges the Court's decision to exclude evidence of Jara's prior acts, permit evidence of the "spitting incident," and allow the Defendants to mention the Family Violence Protection Act. (Doc. 97 at 7, 8.) However, none of these claims substantiate a need for a new trial under Rule 59 because "[n]either an error in the admission or exclusion of evidence nor an error in a ruling or order of the court, nor anything done or omitted by the court, can be grounds for granting a new trial unless the error or defect affects the substantial rights of the parties." *Rasmussen Drilling, Inc. v. Kerr-McGee Nuclear Corp.*, 571 F.2d 1144, 1149 (10th Cir. 1978). The error affects substantial rights if it "had a 'substantial influence' on the outcome or leaves one in 'grave doubt' as to whether it had such effect." *United States v. Washington*, 653 F.3d 1251, 1270 (10th Cir. 2011) (citations omitted.) Thus, to warrant a new trial, Wilson must show that the Court's evidentiary decisions were not only erroneous, but also that the error substantially affected the outcome of the trial.

      In arguing that Jara's prior acts should have been admitted, she offers two justifications: 1) plaintiffs in malpractice cases may introduce other instances of malpractice, and 2) both officers took an oath to uphold the Constitution. Analogizing to medical malpractice cases and stating the fact that police officers must uphold the Constitution do not explain why the Court's decision was erroneous. She does not address the standards of Federal Rule of Evidence 404(b), which governs character evidence, nor the Court's application of the four prong *Huddleston* test for determining whether Jara's prior acts would be admissible in this circumstance. (Doc. 72 at 11-14 (applying

*Huddleston v. United States*, 485 U.S. 681, 691-92 (1988)).) Thus, the exclusion of Jara's prior acts cannot be the grounds of a new trial, because Wilson has not demonstrated that the exclusion was improper, let alone outcome determinative at trial.

Additionally, Wilson seems to argue that since Jara's prior acts were not submitted at trial, evidence of those acts constitutes "new evidence." (Doc. 97 at 6-7; Doc. 126 at 6; Doc 125 Exs. 11, 12, 13, 14, and 15.) However, evidence of Jara's prior acts cannot meet the definition of "new evidence" under Rule 59(e) or 60(b) because the evidence is not new. The court was aware that the evidence existed and consciously decided to exclude it.

Wilson has the same legal problem with her other two arguments. She claims that the admission of the "spitting incident" was "highly prejudicial," and that the Defendant's mention of the Family Violence Protection Act "absolutely clouded the jury's right to see the evidence clearly." (Doc. 97 at 7, 8; Doc. 125 at 10.) Again, Wilson's assertions are conclusory. She does not explain why mention of the Family Violence Protection Act or the spitting incident violated the Federal Rules of Evidence, nor does she explain how the evidence determined the outcome of the trial. Because I do not find any error in the admission of this evidence, I do not recommend that the Court hold a new trial.

C.      *New Evidence*

The remainder of Wilson's claims are tied to the assertion that she has uncovered new evidence. (Doc. 97 at 5, 7, 9, 10; Doc. 126 at 5-6.) However, none of the "new" evidence can justify an amended verdict or a new trial under Rules 59(e) and 60(b), primarily because Wilson had the evidence or could have easily discovered the evidence before trial. *See Webber v. Mefford,* 43 F.3d 1340, 1345 (10th Cir. 1994) (citations omitted) ("In order to supplement a Rule 59(e) motion with additional evidence . . . the movant must show either (1) that the evidence is newly discovered, or

(2) if the evidence was available at the time summary judgment was granted, that counsel made a diligent yet unsuccessful attempt to discover the evidence."); *see also Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997) (citations omitted) ("A Rule 59(e) motion to alter or amend the judgment should be granted only 'to correct manifest errors of law or to present newly discovered evidence.'")

Wilson provided the Court with 136 pages of exhibits that she believes constitute new evidence. (*See* Doc. 94; Doc 97 at 14-37; Doc. 126 Ex. 1-20; Doc. 127 Ex. 1) I will not go through the evidence item by item. Most of the evidence is information that was easily discoverable by Wilson or that she clearly had prior to trial,[13] such as: copies of depositions taken for this case (Doc. 97 at 14-16, 20, 32-37; Doc. 126 Ex. 1, 10); police reports of the incident and a witness statement (Doc. 97 at 17-18, 31); the criminal complaint against Wilson (*id.* at 19); the Albuquerque Police Department policy manual (*id.* at 21-30); emails Wilson sent or received (Doc. 94 at 15-40; Doc. 97 Ex. 1 at 11-29; Doc. 97 Ex. 2 at 1-7; Doc. 126 Ex. 9); public court records (Doc. 94 at 2-3; Doc. 97 at 38-39); Wilson's medical records (Doc. 94 at 9-11; Doc. 97 Ex. 1 at 5-8; Doc. 125 Ex. 3); Wilson's employment records (Doc. 94 at 13-14; Doc. 97 Ex. 1 at 9-10; Doc. 97 Ex. 2 at 8); a notice from her landlord for non-compliance with her rental agreement (Doc. 97 Ex. 2 at 8); and affidavits from family members (Doc. 126 Exs. 2, 5,6, 7; Doc. 127 Ex. 1).

Her other evidence is simply irrelevant. She offers an internet news article about the outcome of her case (Doc. 125 Ex.16), but a summary of the outcome of the trial has absolutely no bearing

---

[13] In her reply brief, Wilson's misunderstanding about what constitutes "new evidence" is indicated by her use of the phrase "newly obtained." (Doc. 126 at 6.) Again, the issue with new evidence is not whether the moving party had the evidence, it is whether she could have uncovered evidence. She has not demonstrated that she would not have been able to obtain these items. *Webber*, 43 F.3d at 1345.

on the legal merits, *see* FED. R. EVID. 401. She also included evidence regarding the financial condition of Launa Markel, a witness at trial. (Doc. 94 at 2-8; Doc. 97 at 8; Doc. 97 Ex. 1 at 1-4.) Wilson argues that Markel was "deceitful and false," and that her attorney, Kennedy, should have moved to exclude her testimony. (Doc. 97 at 8-9.) There are a number of problems with this argument. First, evidence of financial problems does not indicate that an individual is deceitful. *See* FED. R. EVID. 608. Second, Wilson wishes to use this evidence for impeachment, so it cannot warrant a new trial. *See Zurich N. Am.,* 426 F.3d at 1290. Lastly, the core of Wilson's claim with respect to this evidence was that Kennedy should have impeached Markel, not that she discovered anything new. As previously mentioned, ineffective assistance of counsel is not a valid justification for a new trial in a civil matter.

       D.    *Fraud*

       Wilson's motion contained mention of defense counsel's comment during trial about her medical records. (Doc. 97 at 10.) Her motion did not clearly state how that incident constituted a ground for relief, but her reply later clarified that she was alleging defense counsel committed fraud, which is a ground for relief under 60(b)(3). (Doc. 126 at 8.) She claims that at trial, defense counsel intimated that her doctor had not heard of her as a means to impeach her. (*Id*. at 7.) Wilson claims that this is false, and she included a letter from her doctor as proof. (Doc. 126. Ex. 2.) As previously discussed, Wilson has not presented a copy of the trial transcript, so her allegations are without support. However, even if I accept that defense counsel made an inaccurate comment about whether a doctor had ever heard of her, it is not clear how this single comment, which does not address the actual issue before the jury, could affect the outcome of an entire trial. I find this is not a grounds for relief.

## CONCLUSION

Chabot and Wilson are unhappy with the outcome of their trial. In part it was due to the tactics and decisions made by their attorney, Joseph Kennedy, in part to the decisions regarding evidence made by the Court, and in part to the decision of the jury. However, neither have presented legitimate grounds for relief. For that reason, I recommend that the Court deny Chabot's motion to vacate or amend the final judgment and deny Wilson's motion for a new trial, to vacate or alter the final judgment, and to enter a judgment as a matter of law.

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

_William P. Lynch_
_____
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any _pro se_
party as they are shown on the Court's docket.                    21