# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

MARTHA WILSON and TIMOTHY CHABOT,

      Plaintiffs,

vs.                                                                                       No. CIV 10-0797 JB/WPL

ALBUQUERQUE POLICE OFFICERS
JENNIFER JARA and DANIEL VAZQUEZ,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Proposed Findings and Recommended Disposition, filed February 1, 2012 (Doc. 132)("PFRD"); and (ii) Plaintiff Timothy Chabot's and Plaintiff Martha Wilson's Objections to the Magistrate Judge's Memorandum Opinion, filed February 14, 2012 (Doc. 133)("Objections").  The primary issues are: (i) whether counsel for Plaintiff Timothy Chabot committed excusable neglect in dismissing his claims with prejudice; and (ii) whether excusable neglect or ineffective assistance of counsel justify judgment notwithstanding the verdict amending the Final Judgment, filed November 4, 2011 (Doc. 87).  Having conducted a de novo review, the Court finds that the Objections lack a sound basis in the facts of the case and in the applicable law.  The Court will therefore adopt the PFRD and overrule the Objections.

## FACTUAL BACKGROUND

Albuquerque, New Mexico police officers Jennifer Jara and Daniel Vazquez were dispatched to Plaintiff Martha Wilson's home to investigate a domestic violence complaint against Plaintiff Timothy Chabot, Wilson's son.  See PFRD at 1.  Wilson answered the door, and, although she initially refused to retrieve her son, when the officers stated that Wilson could retriever her son

or that the officers would do so, Wilson retrieved Timothy Chabot.  <u>See</u> PFRD at 1.  Timothy

Chabot came to the door, the officers asked him to go downstairs, and, when he did not comply, he

was arrested while standing in the interior of the doorway.  <u>See</u> PFRD at 1-2.  After arresting

Timothy Chabot, the officer took him downstairs and ordered Wilson not to follow.  <u>See</u> PFRD at

2.  Wilson followed and was later arrested for battery on a police officer, disorderly conduct, and

resisting arrest/obstructing justice.  <u>See</u> PFRD at 2.

The state brought criminal charges against Timothy Chabot, and a jury convicted him of

resisting arrest and criminal damage to property.  <u>See</u> PFRD at 2.  Timothy Chabot subsequently

moved out of state.  <u>See</u> PFRD at 2.  When a highway patrol officer pulled Timothy Chabot over

in Maryland, the officer informed him that there was a warrant for his arrest in connection with his

New Mexico convictions.  <u>See</u> PFRD at 2; Plaintiff's Motion to Vacate the Final Judgment of

Dismiss with Prejudice/in the Alternative Amend the Final Judgment ¶ 10, at 2, filed December 2,

2011 (Doc. 96)("Motion to Vacate"); Criminal Summons at 8 (dated January 20, 2009), filed

December 2, 2011 (Doc. 96).

## PROCEDURAL BACKGROUND

Wilson and Timothy Chabot filed their Complaint in the Second Judicial District Court,

Bernalillo County, State of New Mexico, on July 15, 2010.  <u>See</u> Complaint to Recover Damages for

Deprivation of Civil Rights (dated July 15, 2010), filed August 25, 2010 (Doc. 1-1)("Complaint").

They brought suit under 42 U.S.C. § 1983 and allege: (i) Arrest and Prosecution Without Probable

Cause (Count I); (ii) Fourth Amendment Claim for Excessive Use of Force (Count II); and

(iii) Fourth Amendment Claim for Warrantless Arrest in Home and Unlawful Entry Into Home

(Count III).  <u>See</u> Complaint ¶¶ 22-23, 28, 33, at 3-5.  On August 25, 2011, the Defendants removed

the case to federal court pursuant to 28 U.S.C. § 1331 federal-question jurisdiction.  <u>See</u> Notice of

Removal ¶ 6, at 2, filed August 25, 2011 (Doc. 1).  After removing the case, the Defendants filed Defendants' Answer to Plaintiffs' Complaint, filed August 26, 2011 (Doc. 6)("Answer").  The Defendants denied the Plaintiffs' claims and asserted that: (i) they are entitled to qualified immunity; (ii) the Plaintiffs or third persons caused the Plaintiffs' injuries; (iii) the arrest-without-warrant provision of N.M.S.A. 1978, § 31-1-7 shields them from liability; and (iv) the Family Violence Protection Act, bars one or more of the Plaintiffs' claims.  See Answer at 3-6.

On July 6, 2011, Wilson moved for summary judgment on Count III of her Complaint, in which she seeks damages as a result of an unlawful in-home detention and arrest.  See Plaintiff Martha Wilson's Motion for Summary Judgment at 1, filed July 6, 2011 (Doc. 31)("Motion SJ").  On July 27, 2011, the Defendants responded and asserted qualified immunity as well as immunity under the Family Violence Protection Act.  See Defendants' Response to Plaintiff Martha Wilson's Motion for Summary Judgment as to Count III at 11, 23, filed July 27, 2011 (Doc. 38)("Response").  The Defendants argue that Jara and Vazquez' actions constituted a threshold arrest,[1] and not an unlawful entry.  See Response at 12-15.  On October 4, 2011, Timothy Chabot's attorney informed the Court that Timothy Chabot is no longer pursuing his claims.  See Memorandum Opinion and Order at 17, filed October 17, 2011 (Doc. 45)("MOO").  On October 17, 2011, the Court entered its

---

[1]The United States Court of Appeals for the Tenth Circuit permits arrests in the "threshold" of a citizen's home if the individual comes to the door voluntarily, because they are then in the public view and do not have a legitimate expectation of privacy.  Compare McKinnon v. Carr, 103 F.3d 934, 935-36 (10th Cir. 1996)("As in United States v. Santana, 427 U.S. 38 . . . (1976), the suspect was visible, standing in the threshold of his doorway, open to public view.  He was in a place sufficiently public that he had no legitimate expectation of privacy."), with United States v. Flowers, 336 F.3d 1222, 1226 n.2 (10th Cir. 2003)("Turning to the present case, a reasonable person confronted by police officers outside his door at night and a command by one of the officers to allow them to enter, would have believed that he had to open the door of his home and submit to the show of authority.  Accordingly, we hold that Flowers' decision to open the door was not voluntary and that he was arrested while in his home.").

Memorandum Opinion and Order granting the Motion for Summary Judgment on the claim that Wilson was illegally seized.  See MOO at 1.

The Court held a three-day jury trial in November 2011.  See Final Judgment at 1, filed November 4, 2011 (Doc. 87).  The jury awarded total damages of $67,500.00 on the illegal seizure claim, but found for Jara and Vazquez on the other two counts.  See Final Judgment at 1.  Chabot did not proceed to trial, and the Court dismissed his claims with prejudice, based on the representations of his counsel that Chabot had elected not to pursue his claims.  See Final Judgment at 1.[2]

## LAW REGARDING OBJECTIONS TO PROPOSED FINDINGS AND RECOMMENDATIONS

District courts may refer dispositive motions to a magistrate judge for a recommended disposition.  See Fed. R. Civ. P. 72(b)(1) ("A magistrate judge must promptly conduct the required proceedings when assigned, without the parties' consent, to hear a pretrial matter dispositive of a claim or defense . . . .").  Rule 72(b)(2) governs objections: "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2).  Finally, when resolving objections to a magistrate judge's proposal "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).  Similarly, 28 U.S.C. § 636 provides:

---

[2]The Final Judgment memorializes counsel's representation that the action be dismissed with prejudice.  See Trial Transcript at 151:14-21 (November 1, 2011)(Court, Kennedy).  Its effect is as a dismissal by court order under rule 41(a)(2) of the Federal Rules of Civil Procedure.  Rule 41(a)(2) provides that "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."  Fed. R. Civ. P. 41(a)(2).

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1)(C).

"'The filing of objections to a magistrate's report enables the district judge to focus attention on those issues -- factual and legal -- that are at the heart of the parties' dispute.'"  United States v. One Parcel of Real Property, with Buildings, Appurtenances, Improvements, and Contents, Known as: 2121 East 30th Street, Tulsa, Okla., 73 F.3d 1057, 1059 (10th Cir. 1996)("One Parcel")(quoting Thomas v. Arn, 474 U.S. 140, 147 (1985)).  As the United States Court of Appeals for the Tenth Circuit has noted, "the filing of objections advances the interests that underlie the Magistrate's Act, including judicial efficiency."  One Parcel, 73 F.3d at 1059 (citing Niehaus v. Kan. Bar Ass'n, 793 F.2d 1159, 1165 (10th Cir. 1986), superseded by statute on other grounds as stated in De Vargas v. Mason & Hanger-Silas Mason Co., 911 F.2d 1377 (10th Cir. 1990); United States v. Walters, 638 F.2d 947, 950 (6th Cir. 1981)).

The Tenth Circuit has held "that a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  One Parcel, 73 F.3d at 1060.  "To further advance the policies behind the Magistrate's Act, [the Tenth Circuit], like numerous other circuits, ha[s] adopted 'a firm waiver rule' that 'provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions.'"  One Parcel, 73 F.3d at 1059.

In One Parcel, the Tenth Circuit, in accord with other courts of appeals, expanded the waiver

rule to cover objections that are timely but too general.  See <u>One Parcel</u>, 73 F.3d at 1060.  The

Supreme Court of the United States -- in the course of approving the United States Court of Appeals

for the Sixth Circuit's use of this waiver rule -- noted:

> It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings.  The House and Senate Reports accompanying the 1976 amendments do not expressly consider what sort of review the district court should perform when no party objects to the magistrate's report. <u>See</u> S.Rep. No. 94-625, pp. 9-10 (1976)(hereafter Senate Report); H.R.Rep. No. 94-1609, p. 11 (1976), U.S. Code Cong. & Admin. News 1976, p. 6162 (hereafter House Report).  There is nothing in those Reports, however, that demonstrates an intent to require the district court to give any more consideration to the magistrate's report than the court considers appropriate.  Moreover, the Subcommittee that drafted and held hearings on the 1976 amendments had before it the guidelines of the Administrative Office of the United States Courts concerning the efficient use of magistrates.  Those guidelines recommended to the district courts that "[w]here a magistrate makes a finding or ruling on a motion or an issue, his determination should become that of the district court, unless specific objection is filed within a reasonable time." <u>See</u> Jurisdiction of United States Magistrates, Hearings on S. 1283 before the Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary, 94th Cong., 1st Sess., 24 (1975)(emphasis added) (hereafter Senate Hearings).  The Committee also heard Judge Metzner of the Southern District of New York, the chairman of a Judicial Conference Committee on the administration of the magistrate system, testify that he personally followed that practice. <u>See</u> <u>id.</u> at 11 ("If any objections come in, . . . I review [the record] and decide it.  If no objections come in, I merely sign the magistrate's order").  The Judicial Conference of the United States, which supported the de novo standard of review eventually incorporated in § 636(b)(1)(C), opined that in most instances no party would object to the magistrate's recommendation, and the litigation would terminate with the judge's adoption of the magistrate's report. <u>See</u> Senate Hearings, at 35, 37.  Congress apparently assumed, therefore, that any party who was dissatisfied for any reason with the magistrate's report would file objections, and those objections would trigger district court review.  There is no indication that Congress, in enacting § 636(b)(1)(C), intended to require a district judge to review a magistrate's report to which no objections are filed.  It did not preclude treating the failure to object as a procedural default, waiving the right to further consideration of any sort.  We thus find nothing in the statute or the legislative history that convinces us that Congress intended to forbid a rule such as the one adopted by the Sixth Circuit.

<u>Thomas v. Arn</u>, 474 U.S. at 151-52 (footnotes omitted).

-6-

The Tenth Circuit has noted, "however, that '[t]he waiver rule as a procedural bar need not be applied when the interests of justice so dictate.'"  One Parcel, 73 F.3d at 1060 (quoting Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991)("We join those circuits that have declined to apply the waiver rule to a pro se litigant's failure to object when the magistrate's order does not apprise the pro se litigant of the consequences of a failure to object to findings and recommendations.")).  Cf. Thomas v. Arn, 474 U.S. at 154 (noting that, while "[a]ny party that desires plenary consideration by the Article III judge of any issue need only ask," a failure to object "does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard").  In One Parcel, the Tenth Circuit also noted that the district judge had decided sua sponte to conduct a de novo review despite the lack of specificity in the objections, but the Tenth Circuit held that it would deem the issues waived on appeal, because such action would advance the interests underlying the waiver rule.  See 73 F.3d at 1060-61 (citing cases from other circuits where district court elected to address merits despite potential application of waiver rule, but circuit court opted to enforce waiver rule).

In addition to requiring specificity in objections, the Tenth Circuit has stated that "[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived." Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996).  See United States v. Garfinkle, 261 F.3d 1030, 1030-31 (10th Cir. 2001)("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived.").  In an unpublished opinion, the Tenth Circuit stated that "the district court correctly held that [a petitioner] had waived [an] argument by failing to raise it before the magistrate."  Pevehouse v. Scibana, 229 F.App'x 795, 796 (10th Cir. 2007)(unpublished).

## ANALYSIS

The Court will overrule the objections to the PFRD.  Although the Court finds that Timothy Chabot has produced affirmative proof demonstrating that his attorney did not have authority to dismiss his case with prejudice, the Court finds that, under New Mexico law, the circumstances of the case would not toll the applicable statute of limitations.  The Court concludes that Timothy Chabot's and Wilson's remaining objections lack a sound basis in the law and facts of the case, and will therefore overrule the Objections.

## I.   THE COURT WILL OVERRULE CHABOT'S OBJECTION TO THE PFRD'S ANALYSIS OF THE STATUTE OF LIMITATIONS.

The Court first addresses Plaintiff Timothy Chabot's objections.  First, Timothy Chabot erroneously argues that the Honorable William P. Lynch, United States Magistrate Judge, should have considered his assertions of excusable neglect and that the interests of justice require that his case go forward despite the statute of limitations.  See Objections at 2-4.  Judge Lynch considered Timothy Chabot's excusable-neglect argument, however, and accepted, arguendo, that excusable neglect had occurred.  See PFRD at 7-8, 7 n.3.  Affidavits are sufficient to overcome the presumption that an attorney has authority to act on a client's behalf.  See FDIC v. Oaklawn Apartments, 959 F.2d 170, 175 (10th Cir. 1992)("Appellants' affidavits stating that neither they nor their agents or representatives authorized Newcombe to represent them or file any pleading on their behalf were sufficient to overcome the presumption of attorney Newcombe's authority to act on their behalf.").  Timothy Chabot filed a statement asserting that he never discussed with his attorney, Joe Kennedy, that he "would not be able to come back and file on [his] own after [Mr. Kennedy] took care of the warrant."  Statement of Fact at 37, filed December 2, 2011 (Doc. 96)("Timothy Statement").  He also filed a letter that the wrote to Mr. Kennedy stating that he took Mr. Kennedy's

advice to "drop" his part of his mother's case and that he wanted to have the dismissal with prejudice changed.  See Letter from Timothy Chabot to Joe Kennedy at 38 (dated November 29, 2011), filed December 2, 2011 (Doc. 96).  Additionally, Timothy Chabot submitted an affidavit from his sister, Tiffany Chabot, which states that she personally witnessed Wilson, in response to the Court's question whether Timothy Chabot's claims should be dismissed with or without prejudice, inform Mr. Kennedy that Timothy Chabot wanted to pursue his claims after the warrant issue was resolved.  See Affidavit of Tiffany Chabot at 36 (dated December 2, 2011), filed December 2, 2011 (Doc. 96). An affidavit from Wilson echoes those statements and avers that she told Mr. Kennedy that the case should be dismissed in such a way that Timothy Chabot could re-file his case.  See Affidavit of Martha Wilson at 23 (dated December 2, 2011), filed December 2, 2011 (Doc. 96).  Because the Tenth Circuit has recognized that a party's testimony that the party did not authorize an attorney to act on that party's behalf is "affirmative proof" sufficient to overcome the presumption that the attorney acted within his authority when entering into a stipulation, the Court finds that the affidavits, statement, and letter that Timothy Chabot submitted are affirmative proof that Mr. Kennedy did not act within his authority when he agreed to a dismissal with prejudice. Thomas v. Colo. Trust Deeds Funds, Inc., 366 F.2d 136, 139-40 (10th Cir. 1966).  Other than the presumption that an attorney acts within his authority, there is no evidence that Mr. Kennedy was authorized to dismiss Timothy Chabot's claims with prejudice.  Accordingly, the Court concludes that Mr. Kennedy acted without authority to dismiss the claims with prejudice.  This finding is sufficient to establish excusable neglect under rule 60(b)(1) of the Federal Rules of Civil Procedure. See Yapp v. Excel Corp., 186 F.3d 1222, 1231 (10th Cir. 1999)("Rule 60(b)(1) motions premised upon mistake are intended to provide relief to a party . . . when . . . an attorney in the litigation has acted without authority . . . .").

Judge Lynch found that  the statute of limitations ultimately barred Timothy Chabot from re-filing his case, such that, even if the dismissal of his case with prejudice resulted from the excusable neglect of his counsel, it amounted to harmless error.  See PFRD at 9.  State law governs statute of limitations and tolling issues in § 1983 actions.  See Mata v. Anderson, 685 F.Supp.2d 1223, 1246 (D.N.M. 2010)(Browning, J.)(citing Fratus v. DeLand, 49 F.3d 673, 675 (10th Cir. 1995)).  Judge Lynch concluded that a dismissal without prejudice, Timothy Chabot's requested relief, would have the "practical effect of a dismissal with prejudice since the statute of limitations has expired."  PFRD at 9.  The statute of limitations on claims under 42 U.S.C. § 1983 in New Mexico is three years.  See Schrader v. Richardson, No. 11-2191, 2012 WL 266933, at *2 (10th Cir. Jan. 31, 2012)(unpublished).

This case was filed two years and eleven months after the events giving rise to the case.  See Complaint at 1.  The Court finds that, under New Mexico law, the statute of limitations would not be tolled.[3]  In King v. Lujan, 98 N.M. 179, 646 P.2d 1243 (1982), the Supreme Court of New Mexico "adopt[ed] the view that even though the filing of a suit ordinarily tolls the applicable limitations period, when an action is dismissed without prejudice because of a failure to prosecute, the interruption is considered as never having occurred."  98 N.M. at 181, 646 P.2d at 1245.[4]  The

---

[3]The Court must consider the statute of limitations, because Timothy Chabot attempts to reassert his claims, which the Court construes as a request that allow him to re-file a complaint in this case.  See Motion to Vacate ¶ 26, at 4.  Timothy Chabot states that he "reinserts [sic] his claim for unlawful entry, unlawful seizure, and unlawful arrest claim [sic] and excessive force and incorporates by referenced [sic] by his previous arguments on the casual [sic] reach of 42 U.S.C. § 1983."  Motion to Vacate ¶ 26, at 4.  Accordingly, the Court must analyze whether any complaint would conform with the applicable statute of limitations.

[4]The Supreme Court of New Mexico, in a later opinion, stated that King v. Lujan addressed N.M.R.A. 1-041(E)(2) and that it did not decide the effect of statute of limitations on a motion under N.M.R.A. 1-060(B)(6), which correlates to rule 60(b)(6) of the Federal Rules of Civil Procedure. See Meiboom v. Watson, 128 N.M. 536, 539-40, 994 P.2d 1154, 1157-58 (2000).  It emphasized that

Supreme Court of New Mexico noted that a "dismissal without prejudice operates to leave the parties as if no action had been brought at all" and that a "party who has slept on his rights should not be permitted to harass the opposing party with a pending action for an unreasonable amount of time." King v. Lujan, 98 N.M. at 181, 646 P.2d at 1245. In a more recent unpublished case, the Court of Appeals of New Mexico held that where a defendant agreed to dismiss his case without prejudice in federal district court, because of the defendant's assertion of qualified immunity, and then re-filed in state court, equitable tolling would not toll the statute of limitations. See Arasim v. Martinez, No. 30,160, 2010 WL 4160977, at *2 (Ct. App. Apr. 23, 2010)(unpublished).[5] Timothy Chabot asserts that the Mr. Kennedy had authority to dismiss his case, because he faced an outstanding warrant in New Mexico and would be unable to attend trial, but that Mr. Kennedy did not have the authority to dismiss his case with prejudice. The Court sees no meaningful distinction between this case and Arasim v. Martinez. Although in that case, the plaintiff dismissed his action to seek a litigation advantage, here, Timothy Chabot seeks to bring his case at another time for personal reasons. At the time that the Court dismissed Timothy Chabot's claims, the Defendants had already spent a significant amount of time and effort on this case and were preceding to trial on Wilson's similar claims and involved the same facts. Timothy Chabot opted to no longer pursue his rights and "a party who has slept on his rights should not be permitted to harass the opposing party

---

it was not overruling King v. Lujan or disturbing its holding that, when a party sleeps on its rights, the statute of limitations continues uninterrupted, but stated that the requirements for granting relief under N.M.R.A. 1-060(b)(6) were such that they avoided unfairly subjecting non-moving parties to the threat of indefinite litigation. See Meiboom v. Watson, 128 N.M. at 540, 994 P.2d at 1158.

[5]In King v. Lujan, the plaintiff requested that the court reinstate his claims in the original suit. See King v. Lujan, 98 N.M. at 181, 646 P.2d at 1245. In Arasim v. Martinez, the Court of Appeals of New Mexico analyzed the statute-of-limitations issue when the plaintiff, after stipulating to the dismissal of his federal suit, attempted to file his suit in state court. See Arasim v. Martinez, 2010 WL 4160977, at *2.

with a pending action for an unreasonable amount of time." <u>King v. Lujan</u>, 98 N.M. at 181, 646 P.2d at 1245.  From the October 2011 hearing to the entry of the Final Judgment, Timothy Chabot's attorneys made clear that his case would not be proceeding to trial.  <u>See</u> MOO at 17; Final Judgment at 1.  He does not dispute that he agreed to a dismissal.  <u>See</u> Timothy Statement at 37.  Timothy Chabot should not be able to extend the statute of limitations period by almost two years in this manner.  Allowing Timothy Chabot to dismiss his claims for personal reasons and then re-file them at a later point, when the warrant issue is resolved, undermines the purpose of the statute of limitations and extends the period in which Timothy Chabot can pursue his claims.

> A plaintiff who files near the end of the limitations period benefits from being able to prosecute his claim after the period has expired, but if he failed to take advantage of that opportunity, and suffers a dismissal for failure to prosecute, there is no reason to let him have an extended period in which to sue.

<u>King v. Lujan</u>, 98 N.M. at 181, 646 P.2d at 1245.  Because the Court finds that New Mexico law would not toll the statute of limitations and because there was only a month left in the applicable limitations period when Timothy Chabot first filed this suit, the Court agrees with Judge Lynch that, even if the Court had dismissed his claims without prejudice, the practical effect of the dismissal would be a dismissal with prejudice.  Accordingly, the Court will overrule the objections related to the statute of limitations.

Timothy Chabot also argues that the Court should apply the doctrine of nunc pro tunc and allow him to re-file his case irrespective of the statute of limitations.  <u>See</u> Objections at 4.  The Court declines to apply this equitable remedy in the current situation.  Timothy Chabot filed his lawsuit and had an opportunity to fully litigate his claims on the merits, but he forfeited that opportunity

when he chose not to attend trial.  See PFRD at 2.[6]  Timothy Chabot argues contends that he was

unable to attend the trial because of this state warrant.  This argument is not persuasive.  It was not

that he was incapable of attending his own trial; rather, he chose not to attend trial.  While he may

have made a prudent choice, it was nonetheless a conscience decision, and not negligence.  Timothy

Chabot chose not to appear in court in 2009 and again in 2011.  He must accept responsibility for

his decisions.  The Court will not waive the statue of limitations when Timothy Chabot's choices

placed him in this position.

## II.    THE COURT WILL OVERRULE THE OTHER OBJECTIONS TO THE PFRD.

Next, Wilson and Timothy Chabot collectively argue that their claims of ineffective

assistance of counsel should be construed as claims of excusable neglect.  See Objections at 5.

Ineffective assistance of counsel and excusable neglect are, however, two separate legal doctrines.

Because this case is not the proper forum to challenge the professionalism and competency of an

attorney, the Court will overrule these objections.  See MacCuish v. United States, 844 F.2d 733,

735-36 (10th Cir. 1988)("MacCuish's appropriate remedy for allegedly incompetent representation

is a malpractice suit against her trial attorney.  Any such incompetence provides no basis for

granting her a new trial."); Cedrins v. Shrestha, No. 09-0262, 2009 WL 1312959, at *2 (D.N.M.

Mar. 31, 2009)(Browning, J.)("[S]hould Cedrins have malpractice claims against her former

attorneys, they should be prosecuted in state court.").  If Wilson and Timothy Chabot's attorney did

not act reasonably, Wilson and Timothy Chabot can proceed with a malpractice action; the

Defendants should not have to deal with the case any longer.

---

[6]Timothy Chabot explains that he was unable to attend the trial because, at the time, there
was a warrant out for his arrest in New Mexico.  See Motion to Vacate at 2-3.  Ironically, the
underlying reason for the warrant was his failure to appear at court in January 2009.  See Motion
to Vacate at 8.

Most of Wilson's objections raise arguments that Judge Lynch considered in the PFRD. Having conducted a de novo review of the PFRD, the Court will not address again those same arguments here.   She also raises new arguments regarding the fraudulent alteration of her employment records, which the Court will not consider.  See Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

The Court notes that a number of Wilson's arguments and objections mention her attorneys' alleged "excusable neglect."   While the PFRD discusses the standard for excusable neglect, see PFRD at 6, 7-8, that Wilson frequently asserts this doctrine indicates that she misunderstands the legal meaning of this term.  First, "neglect" entails either acting without the client's consent or making a litigation mistake, such as failing to file or comply with deadlines.  See Yapp v. Excel Corp., 186 F.3d 1222, 1231 (10th Cir. 1999)("Rule 60(b)(1) motions premised upon mistake are intended to provide relief to a party . . . when the party has made an excusable litigation mistake or an attorney has acted without authority . . . .").  If the alleged incident entails a mistake, then it must be excusable, meaning that the party was not at fault.  See Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 394 (1993)("This leaves, of course, the Rule's requirement that the party's neglect be 'excusable.'"); Cashner v. Freedom Stores, Inc., 98 F.3d 572, 577 (10th Cir. 1996)("If the mistake alleged is a party's litigation mistake, we have declined to grant relief under Rule 60(b)(1) when the mistake was the result of a deliberate and counseled decision by the party."); Pelican Prod. Corp. v. Marino, 893 F.2d 1143, 1146 (10th Cir. 1990)(holding attorney carelessness is not a basis for relief under Rule 60(b)(1)).  Courts will not grant relief when the mistake complained of is the result of an attorney's deliberate litigation tactics.  See Cashner v. Freedom Stores, Inc., 98 F.3d at 577.  This rule exists because a party

-14-

> voluntarily chose [the] attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.

Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. at 397 (quoting Link v. Wabash R. Co., 370 U.S. 626, 633-34 (1962))(internal quotation marks omitted).  Wilson's assertions of "excusable neglect" are overwhelmingly based on her attorney's litigation tactics, and not on blameless mistakes or a lack of consent.  See Yapp v. Excel Corp., 186 F.3d at 1231 ("Excusable litigation mistakes are not those which were the result of deliberate and counseled decision by the complaining party."); Pelican Prod. Corp. v. Mariano, 893 F.2d 1143, 1146 (10th Cir. 1990)("Carelessness by a litigant or his counsel does not afford a basis for relief under Rule 60(b)(1).").  The Tenth Circuit has held that there is nothing "novel" about "the harshness of penalizing [a client] for his attorney's conduct" and has noted that those "who act through agents are customarily bound," even though, when "an attorney is poorly prepared to cross-examine an expert witness, the client suffers the consequences."  Gripe v. City of Enid, Okla., 312 F.3d 1184, 1189 (10th Cir. 2002).  There is a tension between how the law treats attorney actions that are without authority, thus permitting relief under rule 60(b), and how the law treats those attorney actions which are inexcusable litigations decisions, thus failing to qualify for relief; although the distinction between those actions may not always be logical, it is well established.[7]  The United

---

[7]The Supreme Court has recognized that individuals must be "held accountable for the acts and omissions of their chosen counsel," and that the "proper focus is upon whether the neglect of respondents and their counsel was excusable."  Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'Ship, 507 U.S. 380, 397 (1993)(emphasis original).  At the same time, the Tenth Circuit has held that when counsel acts without authority, rule 60(b)(1) provides relief from judgment.  See Cashner v. Freedom Stores, Inc., 98 F.3d at 576 ("[A]s a general proposition, the 'mistake' provision in Rule 60(b)(1) provides for the reconsideration of judgment only where . . . an attorney in the litigation

has acted without authority from a party . . . ."). There is a tension between these decisions, because, ordinarily, a client will not authorize his or her attorney to act in a negligent manner or to make a mistake. The Court is inclined to conclude that, when the client acknowledges that they have hired the attorney, there is a difference between decisions which terminate the litigation, such as settlement or a stipulation of dismissal, and other litigation decisions, because decisions to terminate the litigation are ordinarily left to the client. See Chavez v. Primus Auto. Fin. Servs., 125 F.3d 861, 1997 WL 634090, at *4-5 (10th Cir. 1997)(unpublished table decision)(citing Navajo Tribe of Indians v. Hanosh Chevrolet-Buick, Inc., 106 N.M. 705, 707, 749 P.2d 90, 92 (1988); Bolles v. Smith, 92 N.M. 524, 526, 591 P.2d 278, 280 (1979)). Otherwise the Court has difficulty explaining attorney decisions which are made without authority and attorney decisions for which it is acceptable that the client suffer the consequences. In Chavez v. Primus Auto. Fin. Servs., the Tenth Circuit recognized that "the mere employment of an attorney does not give him the actual, implied or apparent authority to compromise his client's case." 1997 WL 634090, at *4. Few Tenth Circuit cases analyze whether an attorney has acted without authority. The cases in which the Tenth Circuit has found a lack of authority appear to fall into two categories: (i) cases in which the attorney entered an appearance without the client's knowledge, see FDIC v. Oaklawn Apartments, 959 F.2d at 175-76 (finding that there were factual issues that the district court needed to resolve where "[t]here is nothing in the record indicating when Appellants became aware of the lawsuit and of Newcombe's purported representation" ); and (ii) cases in which the attorney's actions terminate the litigation, see Thomas v. Colo. Trust Deeds Funds, Inc., 366 F.2d at 139-40 (finding that, as to one of the plaintiffs, "the record shows that he did not participate in the transactions and negotiations with the S.E.C. and did not consent to the execution of the stipulation of the judgment"); Cashner v. Freedom Stores, Inc., 98 F.3d at 577 (citing with approval Surety Ins. Co. of Cal. v. Williams, 729 F.2d 581, 582-83 (8th Cir. 1984), which held that a "judgment entered upon an agreement by the attorney may be set aside on affirmative proof that the attorney had no right to consent to its entry"). Because decisions that terminate the litigation are ordinarily the client's prerogative, those decisions fit more squarely within rule 60(b)(1)'s "lack of consent" prong. Decisions where the purported client is unaware of the litigation, or of the attorney's attempt to act on his or her behalf would also fit within rule 60(b)(1)'s "lack of consent" prong, because an individual has the right to choose his or her own attorney or whether he or she wishes to have any attorney. Other litigation decisions are made jointly or are within the attorney's control, see Model Code of Prof'l Conduct R. 1.2 cmt. 1 (2011) ("With respect to the means by which the client's objectives are to be pursued, the lawyer shall consult with the client . . . and may take such action as is impliedly authorized to carry out the representation."); Pittman ex rel. Sykes v. Franklin, 282 F.App'x 418, 427 n.6 (6th Cir. 2008)(unpublished)("[T]he decision to allege comparative fault as an affirmative defense falls within a narrow band of circumstance in which an attorney may act without consulting his or her client"), and, thus, to give final judgments meaning and allow cases to terminate, it is logical that those decisions must fall within the "excusable litigation mistake" prong or be based on a substantive mistake of law or fact. Although the Tenth Circuit does not appear to have expressed its views on where the line is drawn between attorneys acting without consent and litigation mistakes, or acknowledged the tension between these two categories, the Court believes that the appropriate division is, when the client is aware that the attorney is acting on his or her behalf, between decisions which dispose of the case and ordinarily require client consent, and other routine

-16-

States Court of Appeals for the Sixth Circuit, echoing language from the Tenth Circuit, has held that "[t]he Supreme Court expressly rejected a suggestion previously made by this court that 'it would be inappropriate to penalize [the client] for the omissions of their attorney.'" United States v. Reyes, 307 F.3d 451, 456 (6th Cir. 2002)(citing Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'Ship, 507 U.S. at 396-97; Allen v. Murph, 194 F.3d 722, 724 (6th Cir. 1999)).  To the extent Wilson alleges the latter, the PFRD addresses those matters in full. Wilson may not re-litigate her claims merely because she is unhappy with her counsel's performance.

**IT IS ORDERED** that: (i) the Proposed Findings and Recommended Disposition, filed February 1, 2012 (Doc. 132), are adopted; (ii) the Plaintiff's Motion to Vacate the Final Judgment of Dismissal with Prejudice/in the Alternative Amend the Final Judgment, filed December 2, 2011 (Doc. 96), is denied; (iii) the Plaintiff's Motion for Judment [sic] Not Withstanding [sic] the Veridict [sic] or in the Alternative to Alter or Amend the Judgment, for Judment [sic] as a Matter of Law on Unlawful Entery [sic] and Unlawful Arrest Claim, and for Partial Additional Trial on for [sic] Compensatory Damages, filed December 2, 2011 (Doc. 97), is denied; and (iv) the Plaintiff Timothy Chabot's and Plaintiff Martha Wilson's Objections to the Magistrate Judge's Memorandum Opinion, filed February 14, 2012 (Doc. 133), are overruled.

_____
UNITED STATES DISTRICT JUDGE

*Parties and Counsel*:

Martha Wilson
Frederick, Maryland

 *Plaintiff pro se*

_____

attorney decisions which take place over the course of the case.

Timothy Chabot
Frederick, Maryland

    *Plaintiff pro se*

Stephanie M. Griffin
Benjamin I. Sherman
Tarra Leigh Hoden
  Assistant County Attorneys
City of Albuquerque
Albuquerque, New Mexico

    *Attorneys for the Defendants*